Nott, J.,
delivered tbe opinion of tbe court:
This is an action brought to recover tbe net proceeds of four hundred and thirty-seven bales of upland and one hundred and thirty-one bales of séa-island cotton captured at Charleston, which it is alleged amount to the sum of $182,000.
The case presents a number of important questions of law, upon the most of which such grave doubts are entertained that the court deems it just to both parties to treat this as a representative case, which should be submitted to the final decision of the Supreme Court. It has already been held that no appeal lies to the Supreme Comt from a decree in the “ abandoned or captured property” cases, except when taken by the defendants. We therefore render a formal judgment in favor of -the claimant, and for the purposes of the appeal frame the following findings of fact and conclusions of law:
1st. The claimant at the beginning of the rebellion was a citizen of the United States, being a native of Rhode Island but a resident of Charleston, South Carolina, where he carried on the business of a photographer. During the rebellion he continued to reside in Charleston. He was well known there among all classes as one of the leading Union men, that is to say, citizens loyally adhering to the United States, and he made great sacrifices for United States prisoners confined at Charleston and poor and unfortunate loyal citizens. He consorted entirely with persons of avowed and unquestionable loyalty, and was in constant communication and consultation with such persons as *419 against the Confederate authorities. During the period of the rebellion the loyal citizens of Charleston, and among them the claimant, were often in great embarrassment and perplexity; but during this period the claimant did at all times bear true allegiance to the United States, and did not in any way aid, abet, or give encouragement, aid or comfort to the rebellion or persons engaged therein, but consistently adhered to the United States, except in the following matters:
1. The claimant having been arrested and thrown into jail by the Confederate provost marshal of Charleston for refusing to bear arms against the United States, and being threatened with being forcibly made to serve in the rebel army, did thereafter serve in the fire patrol of Charleston, an organization intended for police purposes, but liable to be called into military service as a home guard, and which did take the place of and relieve the regular military organizations from duty in Charleston as a provost guard. This fire patrol was regarded by citizens loyal to the United States in Charleston as a resort for evading military service, and not as a means for giving aid or comfort to the rebellion.
2. The claimant did also unite with certain other persons in forming a joint stock company to purchase a vessel called the Louisa, freight her with cotton, and run her through the blockade then established by the United States. It was expected and intended by the claimant when engaging in this enterprise that the Louisa should not return, and that the proceeds should be invested and kept for the owners abroad as a fund for them beyond the control of the Confederate authorities. But the persons managing the company did, in fact, invest the proceeds, or a part of them, in a steamer called the Aries, and freighting her with an assorted cargo ran her through the blockade, still continuing, into the port of Charleston. - Immediately after her arrival at Charleston the claimant sold out his interest in the company, for the reason that the proceeds of the Louisa had not been invested and kept abroad. He also paid over the dividends thereafter received from the cargo of the Aries to the purchaser of his share, and he took no further part or interest in the company, nor in violating nor aiding to violate the blockade.
3. The claimant did also during the rebellion and during the continuance of the blockade, established and maintained by the *420 United States, import sundry articles of merchandise into the port and city of Charleston from foreign ports, by sending’ abroad for them and having them come consigned to him through the Confederate custom-house at Charleston, and by paying the duties and imposts assessed and imposed thereon by the Confederate authorities under certain statutes enacted by the Confederate congress. The merchandise so imported consisted of sundry small articles of medicine, wearing apparel, and articles for household use, the chief and only large invoices being “ one hundred and twenty dozen hosiery ” and “ one hundred and eighty-eight boxes wax tapers.” The articles so imported were designed for use, and were used equally, in the hospital of the Union prisoners in Charleston, in his own family, and in trade among loyal friend's. The object of and motive for the importation were not trade and commerce nor the acquisition of gain, but to relieve the necessities of United States prisoners and of his own family and the families of his loyal friends, nor did the importations furnish aid or comfort to the rebellion further than by the payment of the duties thereon.
But this court decides, as a conclusion of law upon the facts aforesaid, that the foregoing excepted matters were not acts of aid or comfort to the rebellion under and within the meaning of the “Abandoned or captured property act,” ap^troved 12th March, 1863, and of the Act to provide for appeals from the Court of Claims, approved 25th June, 1868, and that the claimant has borne true allegiance and consistently adhered to the United States, and is entitled to and of right may prosecute his claim herein and maintain his action in this court.
2d. And this court further finds as a matter of fact, that—
The claimant, at various times during the rebellion in the city of Charleston, with no intent to wrong or defraud the United States, purchased large quantities of cotton of persons whose loyalty was to him unknown; and of whom it has not been proved to the satisfaction of this court that they never gave aid or comfort to the rebellion. These purchases were for cash and in the course of the ordinary business of the claimant since the beginning of the rebellion, though not in the course of the business pursued by him before the beginning of the rebellion. They were made in open market and at current rates, and the object of the purchases was as an investment to hold, and which was in fact held till the recapture of Charles *421 ton by tbe United States. The purchases were made at the following times, viz:
During the years 1863 and 1864, being prior to the time of the recapture of Savannah by the forces of the United States under Major General Sherman, 303 bales of cotton. During the month of January, 1865, and before the forces under Major General Sherman had commenced their march northward from Savannah, leading to the reduction of Charleston, 154 bales. During the month of February, 1865, after it was known in Charleston that Major General Sherman had marched from Savannah, but prior to the evacuation of Charleston by the rebel forces, 28 hales of cotton.
And this court, as a conclusion of law upon the facts aforesaid, decides that the purchases of cotton by the claimant were good and valid purchases of the cotton described, and were not in violation or fraud of any statute or law of the United States, but constituted the claimant the owner of such cotton within the intent and meaning of the “ Abandoned or captured property act,” approved 12th March, 1863.
3d. And the court further finds, as a matter of fact, that upon the capture of Charleston by the forces of the United States in 1865, and shortly thereafter, the defendants captured and took possession of three hundred and sixty-six bales of the claimant’s upland, and one hundred and nineteen bales of his sea-island, cotton, all of which ivas sold by the proper agents of the defendants and the net proceeds thereof deposited in the Treasury as a part of the abandoned or captured property fund, which net proceeds, exclusive of the tax of two cents per pound imposed by the Act 1th March, 1864, (13 Stat. L., p. 15, § -4,) amounted to the sum $131 20 per bale for upland cotton, and $237 60 per bale for said sea-island cotton.
And the coiut, as a conclusion of law, decides that the claimant is entitled to recover the said sum of $131 20 per bale for his said three hundred and sixty-six bales of upland cotton, and the said sum of $237 60 per bale for his said one hundred and nineteen bales of sea-island, amounting in the aggregate to the sum of seventy-six thousand two hundred and ninety-three dollars and sixty cents, ($76,293 60,) and that the tax of two cents per pound on such cotton imposed on cotton by the said act 7th March, 1864, should (not be deducted from such net proceeds.